I'll be delivering oral argument on behalf of the appellant in this matter, OCA. I'm actually not going to reserve any time up front. If I manage to get done with time still available, I'll certainly take that in rebuttal. There are four items this morning that I'd like to emphasize because I believe they're worthy of further comment. Number one, the applicable standard of review and why de novo review does, in fact, apply to two of the items that are currently before your honors. Number two, Civil Code Section 1717, why the district court erroneously focused entirely on that statute. And then also why it makes a difference, because there's been a suggestion in the pleadings thus far that it doesn't really matter. It does matter, and I'll tell you why. The cost issue, the language of Section 8.10, does not expand the scope of available costs over and above what would be available to Dr. Hobson under the prevailing cost statutes. And finally, the promissory note issue that I'd like to address as well. So those are the four items I'd like to touch on. First, the standard of review. And I want to make very clear to all of you that we are not contending that abuse of discretion does not apply when you're talking about prevailing party determinations in general. As a general matter, that is the correct standard. In fact, we point that out at page 21 of our own brief. What I do need to point out, though, and what I believe is the salient point of analysis, is that when you're dealing with legal issues, issues of contractual and statutory interpretation, and how the statutes and contractual provisions interrelate with one another, that's de novo. That's reviewed de novo. There has not been any substantive opposition to that point. The only complaint that Dr. Hobson makes about our point, about those principles, is that we don't address that concept in the context of attorney's fees cases. But he doesn't dispute the principles themselves. And if he wants to look at two cases that dealt with those principles specifically in the context of attorney's fees cases, I'd offer him two opinions that were penned by Judge Nelson in the 1990s, Velarde v. Pace and Rock Creek v. State Water Resources Control Board. In the Velarde case from 1997, Judge Nelson wrote, quote, the district court's award of attorney's fees is discretionary, and as such, this court reviews under an abuse of discretion standard. However, whether the district court properly interpreted and applied the relevant statute is reviewed de novo, and even more forcefully in Rock Creek, where the analysis was whether or not attorney's fees were available under a particular statute. Quote, awards of attorney's fees pursuant to 42 U.S.C. section 1988 are reviewed for abuse of discretion, but any elements of legal analysis and statutory interpretation which figure into the district court's decision and the legal standards applied by the district court are subject to de novo review. Under those principles, I respectfully submit that two questions are thus reviewed de novo. Number one, whether or not Civil Code section 1717 is the exclusive governor of the prevailing party analysis. And number two, whether section 8.10 of the Business Services Agreement expands the scope of costs that may be awarded. And so with that in mind, I'd like to turn to those issues seriatim. First, relative to section 1717, the district court focused exclusively on that provision, and Dr. Hobson in his appellate brief at page 27 says that section 1717 should be applied, and that, quote, the prevailing party is the party prevailing in the breach of contract action. I take issue with that, and I'd like to elucidate by virtue of bringing in the Santisus case, because that's the case that both parties cite exclusively. I believe it best frames the issue. Dr. Hobson quotes from the Santisus case, and this is a direct quote from the case in his brief at page 28. He says, quote, because plaintiff's complaint includes the claim for breach of contract within the scope of section 1717, we must look to section 1717 to determine whether the seller defendants are parties prevailing on the contract. Now, in Dr. Hobson's brief, it says, period, end quote. But that is not the end of the sentence in Santisus, and I'm not nitpicking here. The rest of the sentence is important, and it says we must look to section 1717 to determine whether the seller defendants are parties prevailing on the contract who may recover attorney's fees incurred in defense of that claim. So Santisus is specifically tethering the award of attorney's fees in that particular analytical framework to the amounts expended on the breach of contract action. And the case goes on. This says, quote, this Court has held that section 1717 applies only to actions that contain at least one contract claim. If an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney's fees incurred to litigate the contract claims, end quote. And if there's any further doubt as to the primacy of the contract language in this analysis, Santisus resolves it. It says at page 608 with regard to the provision at issue there, quote, on its face, the provision embraces all claims, both tort and breach of contract in plaintiff's complaint, because all are claims arising out of the execution of the agreement or the sale, end quote. And similarly, if you consider the action here, as is mandated under section 8.10, the same results obtained. Now, one thing I'd like to talk about is why does it matter? Because, again, there's been a suggestion that it really doesn't matter, that it all shakes out essentially the same way. It does matter. In fact, it's of critical importance. Perhaps the most important point I have for you today is this. If you look at the whole action, as is mandated under the contract, the case is brought squarely within the auspices of CCP, California Code of Civil Procedures, section 1032A4. And that's entitled prevailing party in any action using that same nomenclature as the contract provision or proceeding. And it says prevailing party is the party with a net monetary recovery, a net monetary recovery. Now, it does list several other items or several other situations under which a party could be deemed a prevailing party, but I urge you to look at that provision. You'll find that none of those apply to this case. The only one that applies is this one, the party with the net monetary recovery. Then, and crucially, section 1032A4 goes on to say, in situations other than as specified, so other than what I've just described, the prevailing party shall be determined by the court. Other than situations such as here where you have a party with a net monetary recovery. Here, because you have such a party, and because that party is OCA, the discretion that Dr. Hobson lobbies for at pages 29 and 30 of his brief and his citations of the Crawford case and the Sears case have no application. Those cases don't apply, and that discretion doesn't apply because 1032A4 says that if you've got the party with the net monetary recovery, that's the prevailing party. No matter how much Dr. Hobson attempts to minimize the significance of the award in favor of OCA, one thing he has not done and cannot do is challenge the fact that we received more, OCA received more on its counterclaim and is the one with the net monetary recovery. And again, as a reminder, that issue is reviewed de novo, because again, this calls for an analysis of the interrelationship of the contractual language and the pertinent sections. At the very least, the matter should be remanded for a determination by the district court to analyze the issue under the contract and under 1032A4, because the district court's decision by the court's own admission was based on equity, not monetary recovery. It was based on equity, and that's at excerpt of record, page 137. There's no room for equitable decision-making in this context because 1032A4 governs. Let's talk about the propriety of Dr. Hobson's claimed costs. And here the issue is whether the business services agreement, section 8.10, expands the scope of a recoverable cost over and above what's provided for in 28 U.S.C. 1821 and 1920. I submit to you, Your Honors, that Dr. Hobson conducts exactly the wrong analysis on this point. He has it backwards. In his brief at page 46, he says, quote, No. That's incorrect. That's not right. First, the provision doesn't say all costs, and it very well could have. Many contracts do. Many attorneys' fees and cost clauses do. But more fundamentally, like the district court, Dr. Hobson errs in talking about the issue in terms of what the contract does not limit rather than what it explicitly permits. That's the wrong analysis. You're looking for language of expansion, not limitation. And if you look at 8.10, it's not there. Now, Dr. Hobson makes several what I would call sort of quasi-policy arguments about OCA's position on this issue. And one such argument is that our construction of this, of the contract language as I'm advocating for, would somehow render that language meaningless. And I submit that that's absolutely not the case. Because but for that language that makes it clear that the prevailing party is the one who in this case, in any dispute between these parties, is going to get the cost, the district court, and these are authorities cited by Dr. Hobson, the district court would have discretion to say a pox on both your houses. I'm not giving you any fees to anybody. Or even to award fees and costs to the non-prevailing party. The district court would otherwise have that discretion, but for this specific language. So the construction that I'm lobbying for certainly does not render that language meaningless. Dr. Hobson also claims that our construction would, he says, quote, at page 48, impose the requirement that the contract language specifically address the Federal statute in order to give force to its plain meaning. Also not true. There's no requirement that the specific statutory section needs to be invoked. There is a requirement that there be some sort of explicit language of expansion. That could be with reference to the statutes at issue, which would be a little complex, but it could be something as simple as simply putting in all costs. And the language doesn't say all costs. There's no modifying term at all in that regard. Section 8.10 does neither of those things. It doesn't invoke language. It doesn't say all costs. It simply establishes that costs in this case are to be awarded to the prevailing party. So we believe OCA is the prevailing party, as I've detailed before, but even if Your Honors disagree, under 8.10, it is improper for the district court to have awarded over $76,000 of otherwise not available costs under the auspices of 8.10. It simply doesn't authorize it explicitly or, heck, even implicitly. But you're looking for explicit language of expansion, and it's not there. Now, let's talk a little bit about the promissory notes. Well, I want to add a question on that. During the trial, it's my understanding that appellants specifically agreed to drop the issue of promissory notes and pursue them later. Why isn't that waiver? I'm glad you asked that. It's not waiver because the circumstances under which we agreed, and I use that term very loosely to drop it, was because the district court's removal of the notes from the action was already a fait accompli. Here's what happened. We had the colloquy that was described in our appellant's brief about why the notes should remain in the trial. And, in fact, I was the one that personally had that discussion with the district court judge. He said that we had waived those because we did not submit specific jury instructions on the promissory notes. He made that decision. The stipulation that is being referred to, there are actually two of them that are being referred to. I'd like to address both. And the one you're talking about, Your Honor, is later on, Judge Shub said, why don't we tell the jury that the notes are no longer a part of the action? And we agreed to that because, again, Judge Shub's decision to take them out of the case was already a fait accompli. We were not substantively agreeing with the propriety of that decision. We were saying that if they're out, we do need to say something to the jury so these things that we've been talking about and giving testimony on and evidence on, they're no longer in the case. The jury's naturally going to wonder what happened to them. In light of what Judge Shub's already done, we do need to have something that at least calls attention to the fact that they're no longer in the case. That's the stipulation Your Honor's referring to. The other stipulation that I'd like to address, and the one that's referenced repeatedly, but mostly at page 14 and 15 of the Respondent's Brief, is this one under which OCA somehow, that there was somehow an agreement that we would not pursue the notes in the context of the litigation. Well, Dr. Hobson's right about two things when he's talking about that ascribed stipulation. We did, shortly before trial, we did propose a stipulation under which notes would be gotten rid of and Dr. Hobson would pay. We also agree with Dr. Hobson that that stipulation didn't materialize. One thing Dr. Hobson leaves out, why didn't it materialize? It didn't materialize because Dr. Hobson wouldn't agree to it. And I can tell you that because I'm the one that personally had the negotiations from Mr. Bradford's colleague and they wouldn't agree to it. So that being the case, we were forced to pursue and litigate those notes, and we did before they were removed from consideration. So this notion that Dr. Hobson has at all times been happily willing to pay the notes and it's just a de minimis issue, it's not true. It's not the case. We were forced to litigate that issue and we attempted to do so before Judge Schub told me that we had somehow waived the matter. Dr. Hobson also indicates that he volunteered, that's his word, on direct examination to pay the notes and that therefore, again, no big deal. Well, Your Honors, I submit that that's simply sound litigation strategy. Having refused to stipulate to pay the notes and knowing that he was dead in the water on that issue, that's sound strategy to elicit that information through your own friendly attorney on direct examination rather than having it brought out in the first instance to the jury on cross. That's certainly not an indicator of Judge Dr. Hobson's actual willingness to pay the notes or that it was somehow an issue that was of no significance. But in terms of this case, looking at the notes, let's assume that we rule against you on all other issues. When we say, okay, you're correct, maybe the notes should have stayed in the case. Does it go back then for trial only on the notes? It would go back, Your Honor. It would go back not only for trial, but even if it – even if Your Honors decided not to remand it back for actual fact-finding, but to simply say – for simply an acknowledgment in Judge Schub's analysis that Dr. Hobson has basically rendered the issue of the notes essentially done because he's acknowledged that they're  And so, we have to do a new analysis because, critically, Your Honor, the notes themselves have attorneys' fee and cost provisions in them. So we're not only talking about the fees that would be available under the big – what I'll call the big contract, the Business Services Agreement, but those are independent contracts that have their own independent fee clauses. So even if Your Honors decided that you didn't want to send it back for, say, back, to say, look, these things shouldn't have been removed. They were in the case. He admitted he had to pay them in the context of trial. Therefore, OCA is the prevailing party on those notes. And, Judge Schub, district court, you should consider those notes and their independent attorneys' fees clauses in dealing with this issue. Did you ever bring that to Judge Schub's attention, say, after the jury came back in, saying, hey, we were blackjacked into doing this? Absolutely. Your Honor, and we want some relief. Let me back off of absolutely. Yes, to an extent. In our post-trial briefing, relative to these issues, the attorneys' fees issues, we certainly brought up the issue and vociferously argued the issue that the notes should be considered. Did we go back in the context of that brief and assail the decision? Not a heck of a lot. We had to be kind of careful, quite frankly, because we were still before Judge Schub, and we brought out the issue that the notes should be considered. But I had already been told by Judge Schub that the notes had been waived. So to go back and try to reinvent the wheel on that issue in the context of our post-trial briefing wasn't going to happen. But I can tell you unequivocally that, yes, we certainly argued strenuously, and I think it's not in the excerpts of the record, but it's probably in the entire record before your honors, that we did argue this issue about the fact that the notes should specifically be considered. And Judge Schub only devoted about one paragraph of his decision to this issue. And he said, yes, OCA did obtain some relief on the notes in the form of Dr. Hobson's acknowledgement that those were But his reason for not really crediting them for anything was that they were still the subject of further litigation. Those were his words. Well, let's say if, let me take it one step further. If we ruled against you and said that you waived that, then you have to sue him for that, right? And then you have to sue him in a separate. Absolutely true. And then if you prevail on that, then those attorney's fees provisions apply to that. True. But what you're arguing here is that you didn't waive it, and it needs to go back and be incorporated in deciding the award of the attorney's fees on the entirety of the matter. Exactly, Your Honor, because under the Verzi case, the Verzi v. Superroot case, one of the cases we cite, even if we don't actually have pursuant to this action a judgment against Dr. Hobson for the notes, and we have to, as in fact we are, filing an independent suit on the notes, by achieving Dr. Hobson's acknowledgment that he did owe on the notes and that those were valid and existing and enforceable obligations, that is an aspect of relief that can and should be considered, even though we didn't actually get a judgment because they were removed. So I notice that I have approximately 30 seconds left. So you're saying that the action on the notes has not yet been filed, but it will be? It has been filed. It has been filed. Yes, it's been filed. It's actually proceeding in the San Joaquin County Superior Court. So, Your Honor, if I may reserve the remaining seconds for a quick rebuttal. All right. I'll give you a minute on rebuttal. Good morning, Your Honors. May it please the Court. Good morning. My name is Matthew Bradford, and I represent Dr. Hobson and his professional corporation, D.C. Hobson, M.S., DDS, or DDSMS. Dr. Hobson is the appellee in this case. First, let me address the promissory notes. I think my opposing counsel here has forgotten that actually the promissory notes case is now back in front of Judge Shub, is currently pending in front of Judge Shub. The OCA removed the promissory note case from the state court case back to Judge Shub, and they have a pending motion to remove that case out to change of venue motion out to Louisiana and make it part of their bankruptcy. According to OCA, the promissory notes are a core proceeding in their bankruptcy. And that is the status of that case. And also, with regard to the promissory notes, Dr. Hobson voluntarily admitted his obligation to pay the promissory notes and did so in his answer to the San Joaquin County complaint. He admitted in his answer that he was obligated on those notes, that he entered into those notes. He disputes the amounts that OCA claims, and he demanded an offset. He wants his judgment, which remains unpaid, credited to those promissory notes. It's not over, though. I mean, it's not over, so. The case is not over. It's before Judge Shub. To the extent that attorney's fees are applicable to a matter that's not in dispute, Judge Shub can make that decision. But the promissory notes are not, are still pending, and that action is still pending. Well, it is in dispute because it's in dispute as to the amount. So it's, you know, otherwise things aren't in dispute when you pay what you say, you know. When they say you owe 71, you say, okay, I'll pay you 71 and you pay it. Until that happens, I'd say this case, that remains in dispute. That is correct, Your Honor. That is in dispute. The liability on the promissory notes is not in dispute, Dr. Hobson's obligation. And, Dr. Hobson, I am not aware of the proposed stipulation that Mr. Baxter referred to. All right. Well, tell us why you think he, that there's a waiver issue for this case. Well, there certainly is a waiver issue. I mean, obviously the argument that your co-counsel is making is he waived it at a point that he was in a half-Nelson pen and, you know, and didn't want to further aggravate Judge Shub. Well, the first issue with respect to waiver is that the error of not including the promissory notes in the jury instructions was OCA's error. The trial court accepted all of OCA's jury instructions, and OCA elected not to provide a jury instruction on the promissory notes. What OCA did is create a jury verdict form that accounted for the promissory notes and tried to separate that out. But they did not create a jury instruction to deal with the promissory notes. And so that was OCA's error and, therefore, would not be subject to appeal here. Then that error resulted in the judge stating, well, if you haven't included the promissory notes in your jury instructions, then you've waived the claim on the promissory notes. That left us in a bind because we'd already presented evidence to the jury on the promissory notes, so we were worried about this issue of a double recovery. So we came up with a decision to instruct the jury not to consider the promissory And we engaged in a stipulation in which we agreed that we agreed on behalf of Dr. Hobson that we would not apply the statute of limitations as it had run during the course of that litigation and allow OCA to proceed, if necessary, on those promissory notes. So that's how that occurred. Now, OCA implies in its brief that it was instructed by the court not to include the promissory notes in its instructions. That's not correct. And that's not what the record shows. The record does not show that Judge Shub, the trial court, instructed OCA not to include the promissory notes in its jury instructions. That was simply an error that OCA made. Was this discovered before the jury was instructed? I'm sorry? Was this omission discovered before the jury was instructed? The omission of the promissory notes, that was discovered before the jury was instructed, yes. That's correct. And that was about two days. That was on Wednesday. The jury was instructed on Friday. So Wednesday, August 4th. And the jury was instructed, I believe, on August 6th or 7th. Okay. And what happened after that, there's a further issue. OCA has not appealed that issue. OCA did not file an appeal. Their notice of appeal does not include the promissory note issue. It would be odd because there's ongoing litigation about the promissory note. But OCA's failure to include the promissory notes in any kind of appeal, in any kind of timely appeal or in their notices of appeal precludes OCA from bringing them in at this point. Your Honor, let me add, too. I don't know if it's real. It's not part of the record, but we've been trying to negotiate. We usually don't like to hear that. I'll exclude it, then. I'm not going to provide that, then, Your Honor. I have a concern a little bit, having run head-on into bankruptcy cases before. But OCA is in bankruptcy in Louisiana? That's correct, Your Honor. And what we have here is a claim by and against OCA, in a sense. Does the automatic stay in bankruptcy come into play in this case at all? The automatic stay should not come into play. And the bankruptcy court actually lifted or issued an order stating that the automatic stay was not applicable to this case, as well as the promissory note case. Because that's kind of like walking by an octopus and expecting to get away with it. Those automatic stays reach everywhere. In fact, this appeal was stayed for approximately four or five months while that issue was taken up, and then after the bankruptcy court issued its order, we waited for 30 days, and then the appeal was back reinstated. So that order has already been issued. Is that order in the record here, the order of the bankruptcy court saying the stay doesn't apply? Yes, Your Honor. Actually, I filed that order immediately after it was issued. I believe it was in August of this year. So I know I sent it to this court for the filing and asked that this appeal be put back on. I also want to address Section 1032. It appears that OCA is basing their claim for that they are the prevailing party on California Code of Civil Procedures, Section 1032, which, as the court I'm sure is well aware, deals with costs awarded after a trial. Now, California, Mr. Baxter's quotation of Section 1032 was not exactly accurate. He leaves out the key sentence, and that is that 1032A4 expressly provides the trial court the discretion to award attorneys' fees for non-monetary recovery. They can determine which party was the prevailing party and consider non-monetary recovery. And this court specifically addressed that issue in the Berkley case, which is cited in our briefs. But in Berkley, in 2002, this court addressed that. In Berkley, at page 919, this court cites 1032, and 1032A4 states, when any party recovers other than monetary relief and in situations other than as specified, the prevailing party shall be as determined by the court and under those circumstances. So the California Civil Code or Code of Civil Procedure expressly authorizes the trial court to consider non-monetary relief. Now, it's hard to say that Dr. Hobson's success in defeating a 25-year contract that OCA valued at $3,221,168 is non-monetary relief. And it certainly is a monetary relief because it has a huge impact to Dr. Hobson. But that the fact that Dr. Hobson defeated that 25-year contract in its 18-month and is free from that obligation certainly had a huge impact financially on Dr. Hobson. It's completely artificial to say that OCA prevailed because they have a net monetary recovery on the judgment page. At some point, we have to consider the fact that Dr. Hobson terminated this 25-year contract. That's the 800-pound gorilla. That's what the whole case was about. And the trial court was not confused by that, and the trial court made that very clear in its order. The trial court listed everything that OCA obtained. It didn't list everything that Dr. Hobson obtained in his action and all of his successes, but it listed everything OCA obtained, and it said, still, OCA got the loser's share of the case. And the court was aware, the trial court was aware, that the relief that OCA obtained was only because this contract was terminated and there were some cleanup issues about whether Dr. Hobson should pay the rent that OCA paid while the litigation was pending. And keep in mind that Dr. Hobson asked, requested from OCA that he be permitted to pay the rent. At the very inception of this litigation, on the first day the complaint was filed, Dr. Hobson wrote a letter to OCA and said, you are required, I'm terminating the contract for cause, and based upon our contract, you are required to transfer to me all the practice obligations, and I make that election, so transfer me the practice obligations, including the leases, for my offices. And also you are required to sell to me the furniture, fixtures and equipment at its adjusted book value. OCA elected not to do that, and thereby further breached the contract. And yet OCA, at the end of the case, that's what OCA was claiming was their relief, that they got Dr. Hobson to pay the rent that he was asking to pay from the get-go, and they got Dr. Hobson to have to buy the furniture, or at least even have the option to buy the furniture, fixtures and equipment at his offices. So those issues were clear to the trial court, and the trial court based its ruling expressly on those issues. And one more point on the promissory notes. The trial court in its order expressly considered the impact of the promissory notes. On page 5 in the first full paragraph, second sentence, the trial court states, that's page 5 of his order, page 138 in the record, Hobson did acknowledge he owed OCA roughly $70,000 on several promissory notes. However, those notes are still the subject of further litigation between the parties, and they represent a small sum compared to the more than $3 million OCA sought in contract damages. So the trial court, the promissory note issue to me is a red herring. We're talking about something that's still pending in litigation, and we're also talking about something that was considered by the trial court. If this were remanded back to the trial court with the order to consider the promissory notes, I'm sure he'd say, I did. I considered the promissory notes. See page 5 of my order. And the promissory, the amount of the promissory notes pales in comparison to the contract, which was the main, the focus of the 14-day jury trial. And that was 14 court days, not 14 calendar days. I also want to address the cost language of Section 810 of the contract between Dr. Hobson and OCA. Paragraph 810 states that the prevailing party in such action shall be entitled to recover its cost and reasonable attorney's fees. There's no modification on what should be included in its cost. There's no indication that the cost should somehow be limited. The obvious, the plain interpretation here is that all costs that incur that are related to the litigation should be included. And that's what the trial court determined. And the trial court exercised its discretion in making that determination and applying that determination that awarded Dr. Hobson his cost. I do also want to address the Santesis case, the Santesis v. Gooden case. The Santesis v. Gooden case is a California Supreme Court case that addresses what happens with Civil Code Section 1717 when there's a dismissal prior to judgment. In that case, the plaintiffs dismissed their complaint against the defendants prior to judgment, and the defendants tried to get their attorney's fees. In that case, Section 1717 does not apply on its face, because Section 1717 states that if there's a dismissal prior to judgment, then this section does not apply. So the California Supreme Court turned first to Section 1717, which was the point that we made in our briefs, which Mr. Baxter quoted. But then it determined that 1717 does not and cannot apply, so it invented what it called the pragmatic test. And then under the pragmatic test, we're supposed to consider essentially, as far as I can tell, the same thing that you would consider under the Sue case, the HSU case, which is who prevailed on the parties, who prevailed on the claims, what were those claims about, what were the litigation objectives, and what was the net end result, given the parties' litigation objectives. That's the same test that this Court, the trial court, applied in its order. So I'm not sure that the – I don't see how the pragmatic test would come up with any different result than what the trial court did. Also, as we pointed out in our – in our brief, the Sears v. Bocoglio case is on all fours in this case. Sears v. Bocoglio represents a case where a plaintiff sued and lost its claim, yet came up with a net recovery, came up with a net recovery. In that case, the plaintiff had a personal guarantee on a lease and is sued to have that guarantee determined invalid. But because the defense – and the guarantee was determined to be actually valid, so the plaintiff lost its claim. But because the lease had been overpaid, the plaintiff in that case ended up with a net recovery, received some of that – the money back on their guarantee. So in that case, the plaintiff lost but won on paper. And that's similar to the situation here. Dr. Hobson was the plaintiff. He won, but it looks – it looks for – at first blush like he lost on paper. But the key thing is he won. He got out of this contract that he sued for 14 days to get out of. And of the claims that were presented to the jury, two breach of contract claims, one claim by Dr. Hobson, one claim by OCA, a breach of fiduciary duty claim by Dr. Hobson, and a conversion claim by OCA. So four claims were presented to the jury. Dr. Hobson won three of those claims. To say that OCA won this case would be to completely ignore the jury trial. There's no question after the jury trial that Dr. Hobson was the winner. He had an $82,594 judgment in his favor at that point. He defeated OCA's conversion claim. He lost his breach of fiduciary duty claim, and he was out of the contract. The only – the only reason that we're even here today perhaps is because there was cleanup after the – after the jury verdict. And with that, Your Honor, I see that – I still have some time left, Your Honor, but I think the points have been made and the Court is aware of Dr. Hobson's case. Let me see if any of the – do any of the panel members have any additional questions of counsel? No. No, I don't. Thank you, Your Honors. All right. You don't have to use all your time. And we respectfully request that the order be affirmed. Thank you. Thank you very much, Your Honors. You have one minute. Thank you. First, Mr. Bradford is correct. The new action has been removed, so it's pending in the district court, not San Joaquin now. The jury instructions versus the special verdict forms, there was no need to have a jury – I would have told Judge Shub this. I wasn't allowed to. There was no need to have a jury instruction because the promissory note claims are founded on breach of contract theories, which are included in the jury instructions we already had. No need to have a separate instruction. Only reason the notes are still the subject of further litigation, as Judge Shub and Mr. Bradford point out, is because Judge Shub erroneously removed those from the purview of our case. 1032A4, Mr. Bradford indicates that I'm misconstruing something. Your Honors, I beseech you to take a look at the statute. I believe it applies to our case. We're the Net Monetary Recovering Party. That governs the analysis. And in terms of non-monetary relief, I don't know of any non-monetary relief that's at issue in this case. Mr. Bradford characterizes these issues as clean-up issues. OCA's recovery is clean-up issues. They are, nonetheless, an award, in Judge Shub's own language, an award that was made in favor of OCA on those various issues. They should be considered. They weren't considered. Your Honors, that's all I have. I ask that – All right. Thank you both for your argument in this matter, and the case will stand submitted at this time.
judges: T.G. Nelson, Gould, Callahan